# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LARRY & SHARON BOWDEN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-06-0811-F |
| | ) | |
| TODD HIGNITE,  KURT SHIREY, | ) | |
| POTTAWATOMIE COUNTY | ) | |
| SHERIFF'S OFFICE, RODNEY | ) | |
| BOTTOMS, and THE | ) | |
| POTTAWATOMIE COUNTY | ) | |
| PUBLIC SAFETY CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Four motions for summary judgment are before the court: defendants Rodney Bottoms and the Pottawatomie County Public Safety Center's motion (doc. no. 24), defendant Todd Hignite's motion (doc. no. 25), defendant Pottawatomie County Sheriff's Office's motion (doc. no. 26), and defendant Kurt Shirey's motion (Dc. no. 27). The motions are fully briefed and ready for determination.

## I. Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment shall be granted if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party has the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

In determining whether a genuine issue of a material fact exists, the evidence is to be taken in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970). All reasonable inferences to be drawn from the undisputed facts are to be determined in a light most favorable to the non-movant. United States v. Agri Services, Inc., 81 F.3d 1002, 1005 (10th Cir. 1996). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials, demonstrating that there is a genuine issue for trial. Posey v. Skyline Corp., 702 F.2d 102, 105 (7th Cir. 1983).

At the summary judgment stage, a movant may make a prima facie demonstration by pointing out to the court a lack of evidence for the non-movant on an essential element of the non-movant's claim. Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998), citing Celotex Corp. v. Catreet, 477 U.S. 317, 322-23 (1986). If the movant carries this initial burden, the non-movant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the non-movant to go beyond the pleadings and set forth specific facts that would be admissible in evidence in the event of trial, from which a rational trier of fact could find for the non-movant. Adler, id., citing Rule 56(e), Fed. R. Civ. P. The facts relied on by the non-movant must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated in those documents. Id., citing Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992).

In this action, the two defendants sued in their individual capacities have each raised a qualified immunity defense. Qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To prevail against a defendant who asserts a defense of qualified immunity,

a plaintiff must show that (1) the official violated a constitutional or statutory right, and (2) the constitutional or statutory right was clearly established when the alleged violation occurred. Eaton v. Meneley, 379 F.3d 949, 954 (10th Cir. 2004). Unless both prongs are satisfied, the defendant will not be required to engage in expensive and time consuming preparation to defend the suit on its merits. *Id.*, citing Siegert v. Gilley, 500 U.S. 226, 232 (1991). Once a public official raises a claim of qualified immunity, the burden shifts to the plaintiff to show that the defendant is not entitled to that immunity. Douglas v. Dobbs, 419 F.3d 1097, 1100 (10th Cir. 2005). If the plaintiff satisfies this burden, then, in order to be entitled to summary judgment, the defendant must show that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light of the law and information the defendant possessed at the time of his actions. Hollingsworth v. Hill, 110 F.3d 733, 738 (10th Cir. 1997).

## II. Claims and Contentions

In the petition,[1] plaintiffs Larry and Sharon Bowden allege a variety of federal and state law claims against a number of defendants, some of whom have previously been dismissed.[2] Plaintiffs' claims arise out of Mr. Bowden's arrest on May 21, 2004, on charges of feloniously pointing a firearm, and his subsequent booking and detention for approximately six days (until he was bonded out) at the Pottawatomie County Public Safety Center ("the jail").

The court makes no formal fact-findings regarding the nature of the underlying events which resulted in the arrest. The gist of that matter, however, is that Mr. Bowden was arrested after his neighbor, Charles Ross, a witness to the events, told

---

[1]This action was removed to this court.

[2]The court dismissed the unserved defendants, granting their motion to dismiss (doc. no. 15) at the status conference on October 5, 2006. (Doc. no. 18, p. 2.)

officers called to the scene that Mr. Bowden had fired a gun toward Mr. Ross's property and that the shot (or shots) killed Mr. Ross's hog.  Plaintiffs claim, among other things, that Mr. Bowden suffered from a medical condition known as Disseminated Idiopathic Skeletal Hypoerostosis, or "DISH."  Defendants do not dispute that Mr. Bowden suffered from DISH, and the court takes Mr. Bowden's condition as established for purposes of this motion.  Plaintiffs allege that Mr. Bowden's DISH condition prevented him from putting his arms together behind his back, that the arresting officer was aware of this limitation, and that Mr. Bowden's hands were nevertheless forced together behind his back in one set of cuffs.  Plaintiffs allege the force employed and the improper handcuffing technique caused Mr. Bowden to have "significant surgery to his arm and shoulder."  (Petition, ¶ ¶ 7, 8.)

The petition makes little attempt to sort which claims are alleged against which defendants.  Based on plaintiffs' briefing and theory of the case, however, it is clear that certain claims either were never intended to be alleged against certain defendants or are no longer pressed against certain defendants.  In that regard, the arrest related claims are pressed only against those individuals or entities which plaintiffs contend are responsible for Mr. Bowden's arrest; the booking and incarceration related claims are pressed only against individuals or entities which plaintiffs contend are responsible for Mr. Bowden's treatment at the jail.

Additionally, per plaintiffs' response briefs, certain claims have now been expressly abandoned.  The complete list of expressly abandoned claims includes: state law claims, tort claims, loss of consortium claims, claims against Todd Hignite (arresting officer) in his official capacity, claims against Kurt Shirey (sheriff) in his individual capacity, and claims against Rod Bottoms (jail supervisor) in his official capacity.  Because all of the originally alleged claims are personal and not derivative, the loss of consortium claim was the only claim which could even arguably have been

pressed by Sharon Bowden.  Thus, abandonment of the loss of consortium claim means that all claims alleged by Sharon Bowden have been dropped.  Therefore, from this point forward, this order refers to a single plaintiff, Mr. Larry Bowden.   Taking the state law claims out of the case leaves plaintiff with four types of claims, each of which alleges conduct in violation of the United States Constitution under 42 U.S.C. § 1983.  The remaining claims are:  arrest without probable cause; use of excessive force during arrest; failure to train regarding use of reasonable force during an arrest[3]; and deliberate indifference to Mr. Bowden's medical needs during his booking and incarceration at the jail.

Defendants' motions challenge all of plaintiff's claims.  The two individual defendants, Mr. Todd Hignite the arresting officer and Mr. Rodney Bottoms the jail supervisor, each assert qualified immunity.  Both individual defendants argue they had insufficient personal involvement in the alleged events to be liable for any of the challenged conduct.  The remaining institutional defendants argue they are not entities that can be sued.  The remaining officials sued in their official capacities argue plaintiff has identified no policy or custom evidence so that the entities they represent cannot be liable under § 1983.  All defendants deny any unconstitutional conduct occurred.  All defendants also argue that plaintiff has identified no evidence that any of Mr. Bowden's injuries were caused by any of the allegedly unconstitutional conduct.

### III.  Claims Against the Institutional Defendants

### A.  Pottawatomie County Sheriff's Office

Plaintiff's claim against the Pottawatomie County Sheriff's Office, while not expressly abandoned, can be easily disposed of because "the sheriff's office" is not

---

[3]The petition only alleges failure to train with regard to use of force during arrest.  (Petition, ¶ 21.)  No claim is alleged for failure to train regarding the boundaries of probable cause.

a proper defendant.  *See*, *e.g.*,  <u>Williams v. City of Guthrie</u>, 109 Fed. Appx. 283, *1 (10th Cir. 2004) (noting district court dismissed §1983 claims against Logan, Oklahoma County Sheriff's Department because it was not a suable entity).[4] Plaintiff's response brief to the Pottawatomie County Sheriff's Office motion for summary judgment (doc. no. 29) appears to agree that the sheriff's office is not a proper defendant.  The response brief, however, goes on to object to summary judgment in favor of the sheriff's office, arguing that the claims alleged against the sheriff's office are the same claims that are alleged against the county,[5] and that these are the same claims that are alleged against Sheriff Kurt Shirey in his official capacity.

Plaintiff's own argument demonstrates that the claims alleged against the sheriff's department are, at a minimum, redundant of the claims alleged against Mr. Shirey in his official capacity.  More importantly though, liability under § 1983 cannot be based upon the doctrine of *respondeat superior* or vicarious liability.  <u>Monell v. New York City Dept. of Social Services</u>, 436 U.S. 658 (1978).  Thus, a government entity is only liable under § 1983 when the constitutional injury can fairly be said to have been caused by that entity's own policies and customs.  *Id*. at 694.  Mr. Bowden has not identified evidence to show that any customs or policies of the sheriff's office, or of the county, caused any injuries.[6]

---

[4]<u>Williams</u> is an unpublished opinion cited pursuant to the requirements of Tenth Circuit Rule 36.3.

[5]Plaintiff has not named Pottawatomie County *per se*, or the Board of County Commissioners of Pottawatomie County, as a defendant.  Title 19 O.S. 2001 § 4 provides that in all suits against a county, the name in which the county shall be sued is the name of that county's board of commissioners.

[6]Of course, plaintiff need not actually "show" or "prove" or "establish" anything to defeat defendants' motions.  Plaintiff must merely demonstrate the existence of a genuine issue of material fact.  Although this order sometimes uses the quoted terms because they are used in the case law, the court has consistently judged plaintiff's claims by the lesser standard which is appropriate at this

(continued...)

Accordingly, the court finds and concludes that the defendant identified in the petition as "the sheriff's office" is entitled to summary judgment in its favor on all claims alleged against it.

### B. Pottawatomie County Safety Center (the Jail)

Mr. Bowden does not expressly abandon any objections to summary judgment in favor of the jail, however, his response brief does not explicitly address the jail's arguments for summary judgment. (Doc. no. 30.)[7] On that basis, the court deems the jail's motion for summary judgment confessed under LCvR 7.2(f). Alternatively, the court finds and concludes that the jail is not a proper defendant. *See*, Carter v. Sharp, 103 F.3d 144, *1 (10th Cir. 1996) (noting the district court found that the Oklahoma County Detention Center was not a suable entity).[8] Finally, as previously stated, a governmental entity has no *respondeat superior* liability in a § 1983 action, yet Mr. Bowden has not identified evidence to show that any customs or policies of the jail caused his alleged injuries.

Accordingly, the court finds and concludes that the jail is entitled to summary judgment in its favor on all claims alleged against it.

### IV. Claims Remaining for Determination

Based upon the above determinations, the remaining claims are as follows.

---

[6](...continued)
stage. Goodwin v. General Motors Corporation, 275 F.3d 1005, 1011 n.7 (10th Cir. 2002)(abrogated on other grounds.).

[7]Although Mr. Bowden's response brief repeatedly refers to treatment he received from the "jail staff," no members of the jail staff, other than Mr. Bottoms, remain defendants.

[8]Carter v. Sharp is an unpublished opinion cited pursuant to the requirements of Tenth Circuit Rule 36.3.

--Mr. Bowden's § 1983 claim that he was arrested without probable cause, alleged against Officer Todd Hignite in his individual capacity and Sheriff Kurt Shirey in his official capacity.

--Mr. Bowden's § 1983 excessive force claim, alleged against Mr. Hignite in his individual capacity and Mr. Shirey in his official capacity.

--Mr. Bowden's § 1983 failure to train claim, alleged against Mr. Shirey in his official capacity.

--Mr. Bowden's § 1983 deliberate indifference claim (that he was forced to stand for many hours with his hand hung over his head during booking, and that he was denied medical care during incarceration), alleged against Rodney Bottoms, the jail supervisor, in his individual capacity.

## A. <u>Arrest Without Probable Cause</u>

Defendants challenge the viability of Mr. Bowden's claim that he was arrested without probable cause.  Probable cause to arrest exists only when the facts and circumstances within the officer's knowledge, and of which the officer has reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.  <u>United States v. Valenzuela</u>, 365 F.3d 892, 896 (10th Cir. 2004).

As a preliminary matter, the court notes the two state court rulings discussed in the parties' submissions.  The fact of these rulings is not in dispute, but their effect is.  On the day after the arrest, May  22, 2004, Pottawatomie County District Judge Douglas Combs, sitting as a magistrate, received defendant Todd Hignite's "Affidavit of Probable Cause for Warrantless Custodial Arrest" and found that there was probable cause for Mr. Bowden's arrest and detention for the crime of felonious pointing of a firearm. (Def. undisputed material fact (UMF) 10 and affidavit). Subsequently, at the preliminary hearing held August 19, 2004, Special Judge J. David

Cawthon determined there was no probable cause and dismissed all charges against Mr. Bowden.  (Transcript of proceedings.)

Both state court rulings were based on the information available to the respective judges at the respective time.  That information and evidence is not necessarily the same information that was available to the officers at the scene.  For example, Judge Cawthon cited inconsistencies in Mr. Ross's testimony as one of his reasons for finding no probable cause, but officers at the scene could not have known that Mr. Ross would later testify at the preliminary hearing in an inconsistent manner. This court reviews yet another set of evidence to determine whether there is evidence of an unconstitutional arrest without probable cause--the record evidence in this civil case--and it evaluates that evidence by the standards applicable to summary judgment. Given these differences, the court concludes it should give no weight to either of the previous state court rulings with respect to whether Mr. Bowden has identified sufficient evidence of unconstitutional conduct.  Thus, to the extent the issue of probable cause is put in issue by defendants' motion, this court considers that issue *de novo*.

Because qualified immunity should be determined as early as possible in proceedings, <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991), the first ground for summary judgment that the court addresses is Mr. Hignite's (the arresting officer's) qualified immunity defense to plaintiff's claim of arrest without probable cause.

Although the content of Officer Hignite's "Affidavit of Probable Cause for Warrantless Custodial Arrest" is not the subject of any of the defendants' proposed undisputed material facts, the affidavit is cited in support of both parties' proposed undisputed material facts and it is also attached to both parties' briefs.  (Doc. nos. 25, 32.)  Plaintiff does not take issue with the affidavit's accuracy *as a report* of what Mr.

Hignite was told during his immediate, on-site investigation of the alleged crime.[9] (Doc. no. 25, Ex. 3; doc. no. 32, Ex. 8.)  Accordingly, the court finds it undisputed that the affidavit of Mr. Hignite, the arresting officer, states as follows.

> On 5-21-04, at approx 11:00 hrs was dispatched to SH270 & [illegible] Rd. Rt 1 Box 293 Shawnee in Pottawatomie Co Okla.  On the above time and date Mr. Bowden was standing in his front yard and fired 2 shot[s] at the residence of Charles Ross striking one of his hogs in a pen he was working at.  Mr. Ross stated that he yelled at Mr. Bowden.  What are you doing, Mr. Bowden then went back to his residence.  When Mr. Bowden was placed under arrest he became combative and Mr. Bowden was transported to the Pott. Co jail.

Mr. Bowden argues that: "the affidavit of probable cause was a one-sided recitation of the facts the arresting officer, Hignite[,] wished he had.  The affidavit reads as if Hignite observed the facts recited himself, instead of relying on the non-credible, non[-]corroborated statement provided by the alleged victim, Charles Ross." (Doc. no. 32, p. 8.)  The court accepts as true Mr. Bowden's argument that Mr. Hignite did not have first-hand information about the incident.  No intention to mislead on Mr. Hignite's part has been shown, however, and no evidence indicates that the reports received by Mr. Hignite at the scene were suspect at that time.  The affidavit states that "Mr. Bowden...fired 2 shot[s] at the residence of Charles Ross striking one of his pigs in a pen he was working at."  This description of events, as reported to Officer Hignite, is sufficient to establish probable cause to arrest Mr. Bowden for the crime of feloniously pointing a firearm.  *See*, <u>Malley v. Briggs</u>, 475 U.S. 335, 344-45 (1986)("Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable...will the shield of immunity be lost.").

---

[9]The court presumes plaintiff disputes the accuracy *of the underlying witness statement(s)* which Mr. Hignite received and then summarized in his affidavit.

Facts extraneous to the affidavit also support a finding of probable cause. Although not included in either party's statements of undisputed facts, it is apparent from the preliminary hearing testimony attached to Mr. Bowden's response brief and from other statements in the briefing, that there is no dispute regarding the fact that the hog in Mr. Ross's pen was dead at the scene. Although Judge Cawthon opined at the preliminary hearing that the officers should have searched the hog for a bullet hole to confirm how the hog died, the hog obviously died somehow. This court finds that the fact the hog was dead at the scene is evidence which corroborates Mr. Ross's statements at the scene and helps to establish probable cause for the arrest.

It also is undisputed the deputies called to the scene spoke with Mr. Ross before coming across the street to speak with Mr. Bowden and ultimately arrest him. (Doc. no. 25, UMF 3). Mr. Bowden argues that this three-minute interview was too short for an adequate investigation into probable cause. For present purposes the court accepts Mr. Bowden's contention that the interview lasted only three minutes. Given the uncomplicated nature of the alleged incident and the exigencies surrounding it, the court finds, however, that three minutes was a reasonable length of time to interview a witness regarding the firing of a gun near a residence.

It is also undisputed that Mr. Bowden admitted there was a gun in his residence. (Doc. no. 25, UMF 4). There is a disputed contention, made by Mr. Bowden, that "[T]he gun at Larry Bowden's residence had not been fired in decades." (Doc. no. 32, pl. UMF 2.) Taking as true Mr. Bowden's contention that "the gun" in his house had not been fired in decades, that fact would not defeat probable cause because it says nothing about which gun was "the gun." It also says nothing about what the officers at the scene knew regarding this purported fact.

In short, based on the undisputed evidence, and taking all disputed facts and all inferences in favor of Mr. Bowden, the court finds that Mr. Bowden has not shown he

was arrested without probable cause.  As there has been no showing of a violation of any constitutional right, the first prong of Mr. Hignite's qualified immunity defense is satisfied.  This determination makes it unnecessary to proceed any further in the qualified immunity inquiry.  *See*, <u>Taylor v. Meacham</u>, 82 F.3d 1556, 1561 (10th Cir. 1996) (affidavit in § 1983 action showed no constitutional violation so court proceeded no further on the qualified immunity issue and affirmed summary judgment in sheriff's favor on individual capacity claim). Nevertheless, the court determines that the second prong of the qualified immunity analysis is also satisfied because plaintiff has not shown that Mr. Hignite violated any clearly established law.  Thus, Mr. Hignite is entitled to summary judgment on Mr. Bowden's claim of arrest without probable cause claim because Mr. Hignite is protected by  qualified immunity.

The other remaining defendant with respect to the lack of probable cause claim is Kurt Shirey sued in his official capacity as Sheriff of Pottawatomie County.  An official capacity suit is, in all respects other than name, to be treated as a suit against the entity.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985).  In an official capacity suit, a plaintiff must prove that his injuries are attributable to a policy or custom of the entity.  <u>Monell</u>, 436 U.S. at 694.  A plaintiff must show a direct causal link between the policy or custom and the injury alleged.  <u>Hinton v. City of Elwood, Kansas</u>, 997 F.2d 774, 782 (10th Cir. 1993).  A municipality cannot be held liable where there was no underlying constitutional violation by any of its officers.  *Id.*

This court has already found there was no underlying constitutional violation because there has been no showing that Mr. Bowden was arrested without probable cause.  The court further finds that Mr. Bowden has not identified any evidence or inferences regarding any policy or custom on the part of Pottawatomie County, the entity of which Mr. Shirey is the representative, much less any evidence of a policy or custom that resulted in Mr. Bowden being arrested without probable cause.  Thus,

Kurt Shirey, sued in his official capacity, is entitled to summary judgment on Mr. Bowden's claim of arrest without probable cause.

## B.  Excessive Force

Mr. Hignite argues that he is entitled to summary judgment on Mr. Bowden's excessive force claim because it is undisputed that another officer, Mr. Brewer, placed the handcuffs on Mr. Bowden at the scene of the arrest.  Mr. Hignite also argues it is undisputed that Mr. Bowden did not inform Mr. Hignite of his DISH condition or of the physical limitations which resulted from that condition.

Although Mr. Hignite is correct that Mr. Bowden's response briefs do not expressly dispute any of defendants' proposed undisputed material facts by number as required  by LCvR56.1(c), the court has done its best to review Mr. Bowden's briefs and the entire record before it, to determine whether there is, in fact, any evidence disputing Mr. Hignite's lack of involvement in these events.  Record evidence shows Mr. Bowden testified at his deposition:  that an officer, "he," told Mr. Bowden to put his hands on the wall; that, as Mr. Bowden put his left hand up, "he" [the officer] put the handcuff on it; that Mr. Bowden asked that two pair of handcuffs be used because he could not put his hands together behind his back due to his bone disease called DISH; that "he" [referring to the same officer] said "I'll get them together"; that this was when "him and Brewer attacked me"; and that Mr. Hignite was "the main one."

Mr. Bowden further testified that what he meant by "attacked" was that "Hignite pulled [his] arm back...and put his forearm against my back and pushed me up against my house, and Brewer come up then and got my other arm and pulled my hands together behind me and latched the one that did the damage."  Mr. Bowden testified that "Brewer is the one that did that" but stated he was claiming "they" damaged his hand.  Mr. Bowden testified that he could not see Brewer but that he

presumes it was Brewer who put the cuff on his right hand, and that "they both had a hold of me, they both engaged in the act." Mr. Bowden testified there was no reason they could not have used two handcuffs, but that "it didn't make a damn to them if my arm fell off." Mr. Bowden testified that "because he [Mr. Bowden] told him [an officer] he couldn't put his hands behind his back, that he had a problem with his bones, but that he did it anyway." (All citations from Bowden depo. pp. 42-46, some pages attached to doc. no. 32, some pages attached to doc. no. 25.)

Based on the above, the court finds there are disputed fact issues regarding what Mr. Hignite contends was his lack of participation in the handcuffing and his lack of knowledge about Mr. Bowden's DISH condition.[10] Thus, the court presumes Mr. Hignite was an informed participant in the handcuffing. With these facts presumed, the next question is whether Mr. Hignite is nevertheless entitled to qualified immunity.

The first prong of the qualified immunity analysis requires the court to determine whether the handcuffing was unconstitutional because it constituted excessive force in light of Mr. Bowden's known DISH condition and his resulting physical limitations. Excessive force claims are analyzed under the objective reasonableness standard. Gross v. Pirtle, 245 F.3d 1151, 1158 (10th Cir. 2001), citing Graham v. Connor, 490 U.S. 386, 395 (1989). The reasonableness of an officer's conduct must be assessed from the perspective of a reasonable officer on the scene, recognizing the fact that the officer may be forced to make split-second judgments under stressful and dangerous conditions. Id., citing Graham at 396-97. The standard requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and

---

[10]Specifically, the court finds that Mr. Bowden's own proposed UMF 7 and 8 ( doc. no. 32) and Mr. Bowden's depo. at  pp. 42-45, dispute Mr. Hignite's proposed UMF 6, 12.

others' safety, and the suspect's attempts to resist or evade arrest.  *Id*.  This standard is clearly established in the context of § 1983 actions.  *Id*.  Additionally, and importantly in this action, an officer is required to assess the amount of force allowed based on the totality of the circumstances.  Jiron v. City of Lakewood, 392 F.3d 410, 414-15 (10th Cir. 2004).

Based on the deposition testimony of Mr. Bowden reviewed above, the court concludes that the first inquiry of the qualified immunity analysis is not met because there are material fact questions as to whether the force used during the handcuffing was excessive in the circumstances.  This conclusion deprives Mr. Hignite of his qualified immunity defense for purposes of summary judgment, and the court need not consider the difficult issue of to what degree of specificity the law must be clearly established, and whether or not it is clearly established, when the issue is whether, and to what degree (if any) an arresting officer is required to take a non-obvious medical condition of an arrestee into consideration in determining reasonable force to effect an arrest.[11]

———————————————————

[11]*See*, Howard v. Dickerson, 34 F.3d 978 (10th Cir. 1994) (home arrest of plaintiff while wearing a neck brace who stated she recently underwent neck surgery and requested handcuffing in front; plaintiff was handcuffed behind her back; officers not entitled to qualified immunity); Martin v. Board of County Commissioners of the County of Pueblo, 909 F.2d 402, 407 (10th Cir. 1990) (officers not entitled to qualified immunity on excessive force or deliberate indifference to medical treatment claims; arrestee had recently suffered a fractured neck, had just been taken out of a neck brace, and was arrested in the hospital on the day of her release from hospital; officers were advised by plaintiff's mother, a doctor, of risk of serious injury including paralysis if plaintiff were moved other than by wheelchair or gurney; medical treatment was interfered with when officers walked plaintiff to a police van and took her to jail for failure to appear on speeding charge); *but see*, Morreale v. City of Cripple Creek, 113 F.3d 1246 (10th Cir. 1997) (officer entitled to qualified immunity defense to excessive force claim where plaintiff, stopped for running a stop sign, was handcuffed behind her back despite requests she be handcuffed in front to avoid aggravating prior shoulder injury), unpublished decision cited pursuant to Tenth Circuit Rule 36.3; and Wells v. State of Oklahoma ex rel. Department of Public Safety, 97 F.3d 1465 (10th Cir. 1996) (no excessive force where officer handcuffed plaintiff behind his back despite plaintiff telling officer his arm "was full of plates and screws," that he "had limited movement and [his arms] would not

(continued...)

The determination that Mr. Hignite is not entitled to qualified immunity is not the end of the story, however, because Mr. Hignite also challenges the viability of the excessive force claim based on a traditional summary judgment analysis, arguing there is no evidence to satisfy the causation element of Mr. Bowden's claim.  As Mr. Hignite's moving brief states, "Assuming *arguendo* that Plaintiff can establish a constitutional violation, Plaintiff must then prove a causal link between the injury and Hignite's 'personal participation' in order for the claim to lie.")  (Doc. no. 25, p. 12.)

With respect to the causation element, Mr. Bowden's response brief (in his own statement of proposed undisputed material facts) states:  "Deputy Hignite did not attempt to accommodate the plaintiff's condition and caused injury to the plaintiff when he handcuffed him"; and, "The handcuffing of the plaintiff caused his wrist to be cut and he bled from his wrist."  (Doc. no. 32, UMF 9, 11.)  The first of these statements is purely conclusory, as is Mr. Bowden's deposition testimony cited to support it.  As for the second statement, Mr. Bowden offers no evidence to show that his DISH condition was a factor in his injuries, or even that the bleeding or cuts on his wrist were the result of being handcuffed in one set of cuffs behind his back.

Although there is a statement in Mr. Bowden's brief (doc. no. 32, p. 12) that the handcuffing damaged Mr. Bowden's wrist and that "plaintiff had surgery on his right hand for carpal tunnel [syndrome] after this [handcuffing] incident," that statement is unsupported by the cited part of Mr. Bowden's deposition.  (Bowden depo at p. 45 simply states Mr. Bowden claims his hand was damaged.)  As alleged in the petition, Mr. Bowden's injuries were from excessive force and the improper handcuffing technique; specifically, the petition alleges that the fact Mr. Bowden was handcuffed

---

[11](...continued)
go behind [his] back," and plaintiff claimed officer "forcefully pulled" his arms behind his back), unpublished decision cited pursuant to Tenth Circuit Rule 36.3.

"hands together, behind his back," "required" Mr. Bowden "to have significant surgery to his arm and shoulder." (Petition, ¶¶ 7-8.) Even if the fact of the surgery were established, that fact alone would not raise an inference that it was Mr. Bowden's DISH condition, combined with the manner in which he was handcuffed, which caused Mr. Bowden to need surgery on his hand.[12]

The court finds and concludes that Mr. Bowden has identified no evidence or inferences, from medical experts or otherwise, to show that any injuries resulted from the allegedly unconstitutional conduct, *i.e.* from being handcuffed behind his back in a single set of cuffs despite his DISH condition. Accordingly, the court finds and concludes that Mr. Hignite is entitled to summary judgment on Mr. Bowden's claim of excessive force.

The other remaining defendant on Mr. Hignite's excessive force claim is sheriff Kurt Shirey in his official capacity. As just determined, Mr. Bowden has identified insufficient evidence to support his excessive force claim. Additionally, he has identified no evidence of any policy or custom regarding the use of force during an arrest, much less any policy or custom linking his alleged injuries to those policies or customs. Accordingly, the court finds and concludes that Kurt Shirey, sued in his official capacity, is entitled to summary judgment on the excessive force claim.

---

[12]Mr. Bowden testified at his deposition (based on transcript pages provided by the defendant with his reply brief) that his carpel tunnel syndrome was a direct result of the handcuffs. (Doc. No. 37, Ex. 1 at p. 90.) That testimony does not link any injury to the DISH condition or to the fact that Mr. Bowden was handcuffed in a single set of cuffs, behind his back; rather, the testimony suggests the fit of the cuffs caused injury. (Doc. No. 37, ex. 1, pp. 89-90.) (Although it is improper to consider any new arguments or evidence included for the first time in defendants' reply briefs, this testimony is arguably more helpful to plaintiff than to defendants because it at least provides some specifics about Mr. Bowden's alleged injuries. If this reply evidence is disregarded, none of the court's rulings would change.)

## C.  Failure to Train Regarding Reasonable Force

Mr. Bowden's claim of failure to train regarding reasonable force is also alleged against Kurt Shirey in his official capacity.  Inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact.  City of Canton, Ohio v. Harris, 489 U.S. 378, 388-89 (1989), *abrogated on other grounds.* Mr. Bowden has identified no evidence to show a constitutional violation for excessive force, nor has any evidence been identified showing any failure to train by the county concerning the constitutional boundaries of permissible force.  *See*, Trigalet v. City of Tulsa, Oklahoma, 239 F.3d 1150, 1156 (10th Cir. 2001) (§ 1983 failure to train case, stating that "absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability imposed on the City of Tulsa on account of its policies, customs, and/or supervision with regard to the individual defendants.").  Accordingly, the court finds and concludes that Kurt Shirey, sued in his official capacity, is entitled to summary judgment on the failure to train claim.

## D.  Deliberate Indifference

The only remaining defendant with respect to Mr. Bowden's deliberate indifference claim is Rodney Bottoms, the jail superintendent, sued in his individual capacity.  As previously noted, Mr. Bottoms asserts qualified immunity as a defense to this claim.

There are two aspects to Mr. Bowden's deliberate indifference claim against Mr. Bottoms.  First, Mr. Bowden contends he was treated in a deliberately indifferent manner during his booking at the jail because he was handcuffed to the holding cell

with his arm extended over his head and required to stand there for a many hours.[13] Second, Mr. Bowden contends he was treated in a deliberately indifferent manner during his incarceration because he was denied adequate medical attention despite Mr. Bottoms's promise to Sharon Bowden that Mr. Bowden would receive adequate medical attention.

Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.  Barrie v. Grand County, Utah, 119 F.3d 862, 869 (10th Cir. 1997).[14]  This is true whether the indifference is manifested by prison doctors responding to the prisoner's needs, or by prison guards intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed.  Id.  Deliberate indifference requires a higher degree of fault than negligence or even gross negligence.  Id.  It requires a lower standard than intentional and malicious infliction of injury, however.  Id.  An official acts with deliberate indifference if his conduct or adopted policy disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights.  Id.  A showing of deliberate indifference requires that defendant must both be aware of facts from which the inference could be drawn and that a substantial risk of serious harm exists, and he must also draw the inference.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).

_____

[13]The petition alleges Mr. Bowden was kept in this position for "almost eight hours." However, Mr. Bowden's brief argues, and he testified at his deposition, that he was "handcuffed to a cage" during booking "for about five hours." (Doc. no. 30, ex. 8, p. 52.) Based on the evidence, the court takes five hours as the relevant time period.  If the period were as much as 8 hours, however, that fact would not change the court's rulings.

[14]The Eighth Amendment constitutional protection against deliberate indifference to a prisoner's serious medical needs announced in Estelle v. Gamble, 429 U.S. 97, 104-05(1976), applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. Barrie, 119 F.3d at 867 (10th Cir. 1997).

1.  Treatment During Booking:

Handcuffed for Hours to Holding Cell

With respect to the alleged manner in which Mr. Bowden was treated during his booking, there is no evidence indicating that Mr. Bottoms was personally involved in those events.  *See*, Monnell, 436 U.S. at 694 (no *respondeat superior* liability for §1983 claim).  Thus, the first prong of the qualified immunity analysis is satisfied because even if Mr. Bowden's contentions regarding the manner in which he was treated are true, there has been no showing that any alleged conduct by Mr. Bottoms violated a constitutional right.  The second prong of the analysis is also satisfied because there has been no showing that Mr. Bottoms violated any clearly established law regarding the manner in which an arrestee, with or without a special medical condition, must be treated during booking.

Alternatively, the court finds that there is also insufficient evidence to support the deliberate indifference during booking claim pursuant to a traditional summary judgment analysis.  It is undisputed that Mr. Bowden was handcuffed to the holding cell with one hand waist high, that when Bowden sat down his hand was at the level of his head, and that Mr. Bowden could sit or stand as he wanted.  (Doc. no. 25, UMF 9.)  It is undisputed that while waiting at the jail during his booking, a jailer switched Mr. Bowden's cuffed hand from his right hand to his left hand.  (Doc. no. 25, UMF 11 and Bowden depo. at pp. 54-55.)  There is no evidence that the manner in which Mr. Bowden was treated caused any injuries.  Thus, the court finds that even if Mr. Bottoms had been personally involved in the challenged conduct, and that even if Mr. Bottoms were not entitled to qualified immunity, Mr. Bottoms is entitled to summary judgment because there is no evidence the challenged conduct caused any injuries.

b. <u>Treatment During Incarceration:</u>

<u>Delay or Denial of Adequate Medical Care</u>

As for the second aspect of Mr. Bowden's deliberate indifference claim--that he was treated in an unconstitutional manner during his incarceration because his medical needs were ignored during his six-day confinement--Mr. Bottoms' only purported involvement is that he promised Sharon Bowden during a phone conversation that Mr. Bowden would receive medical attention, but that Mr. Bowden did not receive the promised medical attention.  Mr. Bowden's briefing bears out the fact that the primary basis for his individual liability claim against Mr. Bottoms is his assertion that:  "Bottom's [sic] the individual [should] be held liable for advising Ms. Bowden that he would take care of it.  It appears that Mr. Bowden entered into a personal relationship with Ms. Bowden by making such a statement." (Doc. no. 30, p. 12.)  This lawsuit, however, is not about equitable estoppel or breach of promise; it is about an alleged violation of Mr. Bowden's constitutional rights by deprivation or indifference to serious medical needs.  Mr. Bottoms's broken promise that Mr. Bowden would be taken to the hospital or to see a medical doctor, is not enough to support a deliberate indifference claim:  there has been no showing that Mr. Bowden actually needed to go to a hospital or to see a doctor; there has also been no showing that Mr. Bottoms knew Mr. Bowden needed this or any other type of medical care.

Thus, Mr. Bottoms has satisfied the first prong of the qualified immunity analysis  because no conduct has been shown on the part of Mr. Bottoms that is unconstitutional under the standards that apply to a deliberate indifference claim.  Mr. Bottoms has also satisfied the second prong of the analysis, because Mr. Bowden has not shown that Mr. Bottoms violated any clearly established constitutional law regarding the denial or delay of any medical care or treatment during Mr. Bowden's confinement at the jail.

Mr. Bottoms also argues that Mr. Bowden has not shown positive medical evidence indicating that any delay in or denial of medical treatment contributed to any of Mr. Bowden's injuries.  When challenged on this ground, plaintiff is required to identify verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment.  *See*, <u>Daniels v. Gilbreath</u> 668 F.2d 477, 480, 488 (10th Cir. 1982) (trial court should have directed a verdict for the defendants in this § 1983 case involving the death of a prisoner; evidence failed to support the verdict because, in a medical case, the causal element must be proven by positive evidence); <u>Winton v. Board of Commissioners of Tulsa County</u>, 88 F.Supp. 2d 1247, 1258 n.7 (N.D. Okla. 2000) (inmate died following attack during incarceration; defendants did not move for summary judgment based on failure to provide medical evidence verifying the detrimental effect on the plaintiff of the delay in medical treatment so the court did not address that issue, but it noted the requirement for medical evidence).

Mr. Bowden has presented no medical evidence linking his injuries to the allegedly unconstitutional conduct.  Thus,  as an alternative basis for its ruling that Mr. Bottoms is entitled to summary judgment based on his qualified immunity defense, the court finds that Mr. Bottoms is entitled to judgment on the second aspect of Mr. Bowden's deliberate indifference claim because there is no evidence that Mr. Bottoms' conduct during Mr. Bowden's incarceration caused any injuries.

## VI.  Conclusion

After careful consideration of the parties' submissions, the pleadings, and the relevant legal authorities, defendants' motions for summary judgment are **GRANTED** in all respects.

Dated this 28th day of June, 2007.

_____

STEPHEN P. FRIOT
UNITED STATES DISTRICT JUDGE

06-0811p004(pub).wpd